# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

STEPHEN M. LUNARDINI,

      Plaintiff,

v.

MASSACHUSETTS MUTUAL LIFE
INSURANCE COMPANY,

      Defendant.

3:09-cv-00461 (CSH)

**OPINION AND ORDER**

HAIGHT, Senior District Judge:

    Plaintiff Stephen M. Lunardini, appearing *pro se*, has filed an employment discrimination complaint alleging "discrimination based on gender (male)." Compl. [doc. #3] at 2. His administrative grievance filed with the Connecticut Commision on Human Rights and Opportunities ("CCHRO"), which is implicitly incorporated into his complaint by reference,[1] also alleges a retaliation claim — although it is unclear whether Lunardini continues to press that claim.

    To the extent that Lunardini's complaint alleges any state-law claims, defendant Massachusetts Mutual Life Insurance Company ("MassMutual") has moved to dismiss those claims on jurisdictional grounds. MassMutual also moves to dismiss the complaint for failure to state a claim upon which relief can be granted, arguing that the federal claims are time-barred for two reasons, and that he fails to state a claim for constructive discharge. In the alternative, MassMutual argues that the form of Lunardini's complaint does not comply with Federal Rules

---

[1] *See* note 6 and accompanying text, *infra*.

1

of Civil Procedure 8 and 10, and moves to dismiss the complaint without prejudice to refiling in a more conventional format.

For the reasons that follow, MassMutual's motion to dismiss is DENIED in part, as to Lunardini's timely federal claims for sex discrimination, and GRANTED in part, as to his untimely federal claims, and as to his state-law claims, to the extent he raises any. Lunardini is instructed that if he wishes to assert claims for discrimination or retaliation under Connecticut law, or if he wishes to plead facts that are sufficient in law to state a claim for a continuing violation, he must refile an amended complaint to that effect within thirty days of this Opinion and Order.

## I.      Factual Background

Taken in the light most favorable to him, Lunardini's complaint alleges the following:

Lunardini worked at MassMutual for more than eleven years. In the year 2000 he assumed management responsibility for a 24-person team, and three years later he assumed responsibility for a team of more sophisticated "New Business Case Managers." Compl. ex. "D" at 1 [doc. #3 at 7].

There came a time when Lunardini began working with Patricia O'Donnell, Assistant Vice-President of Life New Business. Prior to working with O'Donnell, Lunardini was "consistently rated average and above average in every performance objective and [] never received a below average rating." *Id.*

On May 15, 2006, O'Donnell delivered a written warning to Lunardini, to which he objected on the grounds that it had not been preceded by a proper verbal warning. O'Donnell claimed that she had delivered such a warning during Lunardini's 2005 year-end review, which had occurred two months earlier, in March 2006. "After she 'slept on it', [O'Donnell] recanted

2

on the written warning, but followed up with an email (as my verbal warning) on 5-23-06.  She proceeded to put me on written warning two weeks later on June 8th."  *Id.* at 2.

In late May of 2006, following a staff meeting on May 25th, Lunardini and other peer managers were asked to resolve a delay in "policy output."  *Id.* at 13.  Lunardini claims that in a conversation with O'Donnell, she accused him of failing to "have the sense of urgency" in addressing the delay, even though he had done more work than two of his peers, and when he pointed this out, O'Donnell could not "stand being questioned or challenged."  *Id.* at 13-14.  Lunardini claims that "[d]uring this time frame, she never valued my opinions.  She was always trying to make my life miserable and acted rudely; I know to get me to leave."  *Id.* at 14.

At some point in June of 2006, Lunardini hired two male interns, which prompted O'Donnell to say to him, "So, you hired all guys huh?"  *Id.* at 9.  Lunardini felt this was a "sexist statement" that was inappropriate, because "[i]t felt as though she expected me to hire women, like she was surprised that I would hire men and that was extremely offens[ive] to me."  *Id.*

After June 8, 2006, when Lunardini received his written warning, he and O'Donnell met on two occasions specifically to discuss his performance.  At the first meeting, O'Donnell instructed Lunardini "to make a development grid for [him]self."  *Id.*  At the second meeting, Lunardini expected to review the development grid, but instead was met by a representative from Human Resources who gave him a probation letter.  *Id.*[2]

Around August of 2006, Lunardini had conveyed his concerns regarding O'Donnell to MassMutual's Human Resources department.  "Deadrick Baker, Vice President of Human

---

[2]      It appears that this meeting occurred on August 24, 2006.  The exhibit attached to Lunardini's complaint actually states: "On August 24th, 2006, Patricia O'Donnell . . . placed me on performance probation despite receiving no development assistance from her."  *Id.* at 2.

Resources, [] was supposedly launching an investigation into my concerns about Patricia O'Donnell and the unfair treatment that I was receiving." *Id.* at 15.

At some point in September of 2006, Lunardini took a short-term disability leave from his position at MassMutual.[3]  He received a letter in early March saying that he "needed to return to work by March 14th." *Id.* at 11.  When O'Donnell received news of his imminent return, she expressed disgust at a meeting "in front of the entire management team." *Id.* at 12.  Lunardini claims that after learning of this reaction, "combined with the knowledge that she was trying to force another male manager out . . . I was afraid and embarrassed to return to work knowing that my manager did not want me there and was just going to fire me shortly after my return." *Id.*

Lunardini believes that he conducted himself in a "similar manner to [his] peers, yet that doesn't seem to matter.  Once [O'Donnell] decides that she is done with someone that is it.  She will do whatever she can to get rid of the person." *Id.* at 6 [doc. #3 at 12].  By contrast, O'Donnell particularly favored another female employee, who was "able to get away with things that others would not." *Id.* at 10.  And he alleges that while he was employed at MassMutual, O'Donnell "never hired any managers that directly reported to her that were males. . . . Clearly, at that time, she didn't want any males working for her directly." *Id.* at 11.  Furthermore, over a period of one and one-half years, three male managers (one of which was Lunardini himself), and one vice-president on O'Donnell's level, were "replaced by females that Tricia O'Donnell selected." *Id.* at 11.

Indeed, Lunardini alleges that O'Donnell favored three female Associate Directors, "all of whom she hired or promoted into management during 2005/2006." *Id.* at 14.  She showed this

---

[3]    Apparently, Lunardini believes O'Donnell's comments about the legitimacy of his disability leave "showed strong discrimination against me," *id.* at 13, but Lunardini concedes that the disability leave "has nothing to do with this case." *Id.* at 12.

favoritism in a variety of ways, such as by calling them by nicknames.  When one of the Associate Directors was hired, O'Donnell said, "Isn't she adorable?", a comment that Lunardini found "inappropriate." *Id.*

## II.    Discussion

### A.         Failure To State a Claim

MassMutual moves to dismiss this action under Rule 12(b)(6), arguing that Lunardini's complaint fails to state a claim upon which relief can be granted for several reasons.

### 1.              Standard on a Motion To Dismiss Under Rule 12(b)(6)

A motion to dismiss under Rule 12(b)(6) must be decided on "facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and [ ] matters of which judicial notice may be taken." *Leonard F. v. Israel Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (citation omitted); *see also Roth v. Jennings,* 489 F.3d 499, 509 (2d Cir. 2007) ("In addition, even if not attached or incorporated by reference, a document upon which the complaint *solely* relies and which is *integral to the complaint* may be considered by the court in ruling on such a motion." (brackets, citation, and internal quotation marks omitted; emphasis in *Roth*)).  Facing a 12(b)(6) motion, all complaints must be construed liberally.  *See Rescuecom Corp. v. Google, Inc.*, 562 F.3d 123, 127 (2d Cir. 2009).  But *pro se* litigants are afforded much wider latitude: their complaints should be interpreted "to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994); *cf. also Triestman v. Federal Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (collecting various formulations of the "solicitude" afforded to *pro se* plaintiffs, some of them conflicting, before concluding that "[u]nder the circumstances, we must all do our best to gauge what is appropriate").  The Second Circuit is particularly "mindful . . . to avoid hastily dismissing

5

complaints of civil rights violations," including Title VII violations. *Gregory v. Daly*, 243 F.3d 687, 691 (2d Cir. 2001) .

In deciding a motion to dismiss, well-pleaded facts must be accepted as true and considered in the light most favorable to the Plaintiff. *Patane v. Clark,* 508 F.3d 106, 111 (2d Cir. 2007). The factual allegations made in the complaint "must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). This requires the complaint to contain "enough fact to raise a reasonable expectation that discovery will reveal evidence" of the plaintiff's claim. *Id.* at 556. "[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads *factual content* that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* --- U.S. ----, ----, 129 S.Ct. 1937, 1950, 173 L.Ed.2d 868 (2009) (citing *Twombly;* internal quotation marks omitted; emphasis added). The Supreme Court distinguishes between factual content and conclusory allegations, stating that when "bare assertions . . . amount to nothing more than a formulaic recitation of the elements" of a claim, then "the allegations are conclusory and not entitled to be assumed true." *Id.* at 1951 (citing *Twombly;* internal quotation marks omitted). The Court has said that "[d]etermining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950.

In sum, the Court's focus on a motion to dismiss under Fed. R. Civ. P. 12(b)(6) is "not whether the plaintiff will ultimately prevail but whether the plaintiff is entitled to offer evidence to support the claims." *Villager Pond, Inc. v. Town of Darien,* 56 F.3d 375, 378 (2d Cir. 1995).

6

2.                    **Failure To File Within 90 Days of the Right-To-Sue Letter**

MassMutual's first argument for dismissal focuses on the filing date of Lunardini's complaint.  An affirmative defense that a claim is barred by the statute of limitations is properly raised in a pre-answer motion to dismiss under Rule 12(b)(6).  *Ghartey v. St. John's Queens Hosp.*, 869 F.2d 160, 162 (2d Cir. 1989).

Under the procedures of Title VII, an aggrieved person may file a complaint in a federal district court within 90 days of receiving[4] notice that the EEOC has dismissed his or her "charge" of discrimination.  42 U.S.C. § 2000e-5(f)(1).[5]

Lunardini's complaint does not plead any specific date on which he received notice of the dismissal of his EEOC charge.  However, Lunardini attached the EEOC's notice itself to his

---

[4]      The plain language of the statute states that an aggrieved person may bring a civil action "within ninety days after the giving of such notice" (the right-to-sue letter).  The phrase "after the giving" is arguably ambiguous.  *See O'Neal v. Marine Midland Bank, N.A.*, 848 F. Supp. 413, 417 (W.D.N.Y. 1994) ("[U]pon a careful reading of the language of § 2000e-5(f)(1), it is apparent that the ninety day period runs from 'the giving of such notice,' rather than from the date the claimant actually 'receives' notice in hand.").  Nevertheless, this provision has been universally interpreted by federal courts around the country to mean that the limitations period runs from the time that the aggrieved person *receives* his or her right-to-sue letter.  *See, e.g.*, *Cornwell v. Robinson*, 23 F.3d 694, 706 (2d Cir. 1994) ("[A] suit must be commenced not more than 90 days after receipt of the right-to-sue letter.");  *Tsanganea v. City University of New York*, No. 06-cv-15366 (DAB) (JCF), 2008 WL 4054426, *4 (S.D.N.Y. Aug. 28, 2008) (collecting cases).

[5]      That section provides, in pertinent part, the following:

> If a charge filed with the Commission pursuant to subsection (b) of this section is dismissed by the Commission . . . the Commission . . . shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge (A) by the person claiming to be aggrieved . . . .

42 U.S.C. § 2000e-5(f)(1).

complaint.  *See* "Dismissal and Notice of Rights," Compl. ex. at 1 [doc. #3 at 6] [hereinafter
"right-to-sue letter"].[6]  The letter purports to have been mailed on December 15, 2008.

MassMutual argues that in light of the date it was mailed, Lunardini "is presumed to have
received the Right to Sue Letter by December 18, 2008."  Def.'s Mem. [doc. #9] at 2.[7]
MassMutual further submits Court records which purport to show that Lunardini "did not deliver
his Complaint to the Court until March 19, 2009 and it was not filed until March 23, 2009."  *Id.*
In support of that claim, MassMutual attaches to its motion an excerpt from the Court's docket,
which I reproduce here, with the relevant entries in bold type:

| Date Filed | # | Docket Text |
|---|---|---|
| 03/16/2009 | 1 | MOTION for Leave to Proceed in forma pauperis by Stephen M. Lunardini. (Grady, B.) (Entered: 03/16/2009) |
| 03/19/2009 | 2 | ORDER denying 1 Motion for Leave to Proceed in forma pauperis. Signed by Judge Donna F. Martinez on 3/19/09. (Martinez, Donna) (Entered: 03/19/2009) |
| **03/19/2009** | | **Complaint Received (Grady, B.) (Entered: 03/19/2009)** |

[6]     Where a plaintiff alleges in the complaint that charges of discrimination have been filed with
the CCHRO and EEOC, those charges themselves "may be considered either as matters referenced
in the complaint or as public records subject to judicial notice."  *Colon v. S. New Eng. Tel. Co.*, No.
3:09-cv-802 (CSH), 2009 WL 4730480, *1 (D. Conn. Nov. 30, 2009) (quoting *McBride v. Routh*,
51 F. Supp. 2d 153, 155 (D. Conn. 1999)).  The record in this case suggests that Lunardini filed only
one charge — with the CCHRO — which was forwarded on to the EEOC at his request.  Thus,
whether his complaint asserts claims under Title VII or under Connecticut law, it appears that the
CCHRO charge is the relevant charge document.  And because a complaint under either Connecticut
or federal law relies on the initial charge document to determine both the timeliness of the lawsuit
and the scope of matters that may be brought to court upon a subsequent release of jurisdiction, I
can safely consider those documents to be "incorporated by reference," even if they were not
explicitly mentioned in the *pro se* complaint.

[7]     Some authority exists for the proposition that the three-day extension of time for mail service
found in Federal Rule of Civil Procedure 6(d) creates a rebuttable presumption that a right-to-sue
letter is received three days after it is mailed.  *See Sherlock v. Montefiore Med. Ctr.*, 84 F.3d 522,
525-26 (2d Cir. 1996) (a right-to-sue letter is normally assumed to have been received three days
after its mailing, and to have been mailed "on the date shown on the notice," but "[i]f a claimant
presents sworn testimony or other admissible evidence from which it could reasonably be inferred
either that the notice was mailed later than its typewritten date or that it took longer than three days
to reach her by mail, the initial presumption is not dispositive"); *see also Baldwin County Welcome
Ctr. v. Brown*, 466 U.S. 147, 148 (1984) (per curiam) (*dicta*).

| 03/23/2009 | | Filing fee: $350.00, receipt number H027875 (Grady, B.) (Entered: 03/23/2009) |
| 03/23/2009 | **3** | **COMPLAINT against Mass Mutual Life Ins Co ( Filing fee $ 350 receipt number H027875) filed by Stephen M. Lunardini.(Grady, B.) (Entered: 03/24/2009)** |

If MassMutual's facts were accurate, its argument would present a formidable challenge to the timeliness of Lunardini's complaint. Because Lunardini would have 90 days from December 18, 2008 to file his complaint, it would have been due on or before March 18, 2009. Given the entries on the Court's docket, his complaint appears to have been received one day late, and filed five days late.

Lunardini presents a different version of events, arguing that his complaint was received at the Hartford Courthouse on March 16, 2009. While I do not rely on the evidence he has submitted,[8] after investigating the Court's records, I find that Lunardini's version of events is indeed accurate. The confusion is ultimately due to a typographical error on the Court's electronic docket.

When Lunardini's complaint was received along with a motion for leave to proceed *in forma pauperis* (the "IFP motion"), under the Court's procedures then in effect, the complaint would have been stamped "Received" on its reverse side with the date it was received. Lunardini's complaint is indeed stamped "Received" on its reverse side, but with a date of

---

[8]    In his opposition to MassMutual's motion, he submits evidence that he sent something to the Court which was received on March 16, 2009, and he claims that his complaint was among the documents the Court received on that day. *See* Pl.'s Opp'n [doc. #14] at 1. That claim is not supported by an affidavit or similar unsworn statement under penalty of perjury pursuant to 28 U.S.C. § 1746, but I need not rely on it in any event, because instead I take judicial notice of the Court's own records. Those records indicate that the complaint was received on March 16, 2009, although it was not stamped "filed" or docketed until one week later.

March 16, 2009.[9]  After consulting the date-stamp on the reverse side of the complaint, I am convinced that the date on the docket — March 19, 2009 — is a typographical error that requires correction.  Therefore, I have directed the Clerk of Court to correct that error upon the filing of this Opinion.  A docket annotation will indicate the change.

Because I have found that Lunardini's complaint was received on March 16, 2009, I need not rely on any presumption that he received his right-to-sue letter on December 18, 2009.  Even if Lunardini received his right-to-sue letter one day after it was mailed — that is, on December 16, 2008 — his complaint would still have been timely delivered to the Court.  The day the complaint was received by the Court — March 16, 2009 — is exactly 90 days after December 16, 2008.

### i.                                Delivery Versus Filing; Equitable Tolling

Even if Lunardini's complaint was *delivered* to and received by the Court in a timely manner, MassMutual appears to argue in the alternative that it was not *filed* until he paid the civil filing fee of $350, which occurred on March 23, 2009.

But even if the complaint is not considered "filed" until the date the filing fee is paid, it is well settled that the 90-day window in which to file an individual lawsuit is not jurisdictional, and thus is subject to equitable tolling.[10]  Thus, I must examine whether to apply equitable

---

[9]      This is consistent with the evidence submitted by Lunardini, namely a "Track & Confirm" receipt printed from the United States Postal Service's website.  *See* [doc. #14] ex. A at 1.  That receipt states that an Express Mail envelope addressed to the Hartford courthouse, *see* ex. A at 2, was delivered at 11:11 a.m. on March 16, 2009, and "was signed for by M GOTHERS."  *Id.*  Martha Gothers is an employee of the Court who works for the Clerk's Office in Hartford.

[10]     Like the time period for filing of a charge of discrimination with the EEOC, the time period for filing a Title VII lawsuit in federal district court is not jurisdictional, and thus, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling.  *See Johnson v. Al Tech Specialties Steel Corp.*, 731 F.2d 143, 146 (2d Cir. 1984); *cf. Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982) (determining that the time limitations for filing a charge of discrimination with the EEOC is not jurisdictional).  However, equitable tolling is applied sparingly.  *See Irwin v.*

tolling in Lunardini's case, where the complaint and IFP motion were filed simultaneously, but the IFP motion was subsequently denied.

The Second Circuit has answered the question of when a complaint should be considered "filed" if the complaint is accompanied by a request to proceed *in forma pauperis* and that motion is subsequently granted.  In *Toliver v. County of Sullivan*, 841 F.2d 41 (2d Cir. 1988), the plaintiff deposited a timely Title VII complaint with the clerk of court, accompanied by an IFP motion, but the plaintiff's complaint was not docketed and considered "filed" until the IFP motion was granted.  The district court dismissed his complaint as untimely, but the Second Circuit reversed, holding that "[a]t least where in forma pauperis relief is granted, the action should be treated as timely, provided the complaint was *received* by the clerk's office prior to the expiration of the limitations period."  841 F.2d at 46 (emphasis added) (citing *Rosenberg v. Martin,* 478 F.2d 520, 522 n.1a (2d Cir. 1973) (quoting the district judge's conclusion that "[t]he action must be treated as commenced on [the date] when the Clerk of Court received the complaint," remarking only that "[w]e agree");  *Neilsen v. Flower Hosp.*, 639 F. Supp. 738, 740 (S.D.N.Y. 1986) (collecting authorities)).

MassMutual cites *Toliver* for the proposition that "the time for filing Plaintiff's Complaint was not tolled by the motion for leave to proceed *in forma pauperis* . . . ."  Def.'s Mem. at 5 n.3.  But I read *Toliver* to support inferentially the opposite proposition: where a complaint and IFP motion are delivered to the courthouse simultaneously, the time for plaintiff to file should be tolled for the pendency of that motion, whether or not the IFP motion is ultimately granted.

---

*Department of Veteran's Affairs,* 498 U.S. 89, 96 (1991).

That is precisely the conclusion reached by other district courts within this Circuit, including a district court opinion that was cited by the Second Circuit in *Toliver*.  In *Neilsen v. Flower Hospital*, Judge Ward concluded that it is "neither unreasonable nor inconsistent with the concerns underlying the District practice . . . to start the ninety-day period running again if IFP status is denied, subject of course to additional tolling if the circumstances warrant it."  639 F. Supp. at 740-41 n.3 (citing *Dzaba v. Blyth Eastman Paine Webber*, No. 84 Civ. 3711(GLG), 1985 WL 199, *2 (S.D.N.Y. Jan. 17, 1985)).  Other circuits have reached similar conclusions. *See Mohler v. Miller*, 235 F.2d 153, 154-55 (6th Cir. 1956); 1 Moore's Federal Practice § 3.02[7] & nn.28-30 ("[A] pending petition before the court to proceed in forma pauperis, filed with a complaint, temporarily tolls a statute of limitations period, and suspends the running of time under the statute, even if the filing fee is not paid at the time of filing.  If the petition subsequently is denied, the limitations period recommences.").

To the extent that precedent in this judicial district does not already compel this conclusion, I now hold that the time period for filing should be tolled during the pendency of the IFP motion, which was denied on March 19, 2009.  Another annotation on the docket (visible only to the Court) indicates it was mailed on the same day.

Even if Lunardini had zero days remaining on his clock to pay the filing fee — and again, that assumes he received his right-to-sue letter only one day after it was mailed — then by operation of Rule 6(d), his final day to pay the fee would be tolled until three days after the Order denying his IFP Motion was mailed.  Thus, Lunardini's deadline to "file" (that is, pay his filing fee) was tolled until March 22, 2009.  But that was a Sunday, so by operation of Rule 6(a), he would have until the next day that the Court was open to pay the fee, which would be March 23, 2009.  In point of fact, that is the date on which Lunardini paid the filing fee, and the date on

which the Clerk docketed Lunardi's complaint as "filed." Thus, Lunardini's action is timely under Title VII's 90-day limitation period.

3.	**Failure to file within 300 days of any "unlawful employment practice"**

In order to state a claim for relief that will survive a motion to dismiss under Rule 12(b)(6), Lunardini must allege that he suffered an unlawful employment practice no more than 300 days before the date he filed his EEOC "charge" of discrimination. MassMutual argues that the vast majority of Lunardini's allegations cannot form the basis of a claim for relief because they occurred outside this time limitation period.

In order to state a claim under Title VII, an aggrieved individual must file a "charge" of discrimination with the EEOC no later than 300 days "after the alleged unlawful employment practice occurred." Civil Rights Act of 1964 § 706(e), *codified at* 42 U.S.C. § 2000e-5(e)(1). However, in a jurisdiction where a fair employment practice agency (an "FEP agency") exists, "Section 706(c) of title VII grants States and their political subdivisions the exclusive right to process allegations of discrimination filed by a person other than a Commissioner for a period of 60 days . . . . After the expiration of the exclusive processing period, the Commission may commence processing the allegation of discrimination. " 29 C.F.R. § 1601.13(a)(3)(ii).

Thus, whether an aggrieved person presents a charge directly to the EEOC, or to a state FEP agency for cross-filing with the EEOC, the EEOC will not consider that charge to be "filed" for the purposes of the 300-day limitations period until the "expiration of 60 . . . days after deferral, or upon the termination of FEP agency proceedings, or upon waiver of the FEP agency's right to exclusively process the charge, whichever is earliest." *Id.* § 1601.13(a)(4)(ii)(B) (for charges filed directly with EEOC); *see also id.* § 1601.13(b)(1). In some cases, this amounts to an effective 240-day limitations period for the filing of an EEOC

charge. *See Mohasco Corp. v. Silver*, 447 U.S. 807, 827 (1980) ("The rule the Court adopts today requires a Title VII complainant residing in a deferral State to file a charge of employment discrimination within 240 days of the allegedly unlawful act, in order to be certain that his complaint is timely.") (Blackmun, J., dissenting).

However, FEP agencies are permitted to waive the 60-day period of exclusive jurisdiction for entire categories of discrimination charges, *see* 29 C.F.R. § 1601.13(a)(3)(iii), in which case the charge will be deemed filed with the EEOC whenever it is filed first presented to the EEOC, *see id.* § 1601.13(a)(4)(ii)(A), or whenever it is presented to the FEP agency, *see id.* § 1601.13(b)(1), whichever occurs first. Such a waiver of jurisdiction often occurs in the context of a "work-sharing" arrangement between a state agency and the EEOC. *See Tewksbury v. Ottaway Newspapers*, 192 F.3d 322, 326-27 (2d Cir. 1999). The CCHRO and the EEOC have been parties to such a work-sharing agreement in the past, *see Doe v. Odili Technologies, Inc.*, No. 3:96-cv-1957(AHN), 1997 WL 317316, *5 n.4 (D. Conn. May 25, 1997), but it unclear from the present record whether the CCHRO and the EEOC currently enjoy such a relationship.

Lunardini's complaint does not contain any allegations as to when he filed any of his charges of discrimination, either with the EEOC or with the CCHRO. But by referring to the documents attached to MassMutual's Motion To Dismiss,[11] I observe two relevant dates. *See* Affidavit of Illegal Discriminatory Practice, Mot. ex. B [doc. #9-3 at 2] [hereinafter "CCHRO Charge"]; Notice of Charge of Discrimination in Jurisdiction Where a FEP Agency Will Initially Process, Mot. ex. B [doc. #9-3 at 9] [hereinafter "EEOC Notice of Charge"]. The CCHRO Charge indicates it was received on July 26, 2007, and it includes an indication that Lunardini wanted the CCHRO to cross-file the same grievance with the EEOC. *See* CCHRO Charge at 6

---

[11] *See* note 6, *supra*.

[doc. #9-3 at 7].   The EEOC Notice of Charge is dated September 27, 2007 — which, incidentally, is 63 days after the date on which the CCHRO charge was filed, suggesting that the CCHRO may not have waived its jurisdiction over claims like Lunardini's.

Although I may later determine that Lunardini's charge was filed with the EEOC on a later date, for the purposes of the present motion, I will assume that it was filed on the earliest date suggested by the present record — namely, July 26, 2007.[12]   The date of September 29, 2006 is 300 days prior to July 26, 2007.

Thus, for the purposes of the present motion, Lunardini's complaint is timely only if it alleges an unlawful employment practice that took place on or after September 29, 2006. Because Lunardini does allege one adverse employment action that takes place after the relevant cut-off date — his CCHRO Charge claimed that MassMutual "constructively discharged me on or about March 14, 2007" — his sex discrimination claim survives this motion to dismiss.   To the extent it rests on the same constructive discharge, his retaliation claim may similarly survive.

**4.**                  **Sufficiency of the "Constructive Discharge" Event as a Matter of Law**

Regarding the one event which took place within the time limitation, MassMutual argues that the event does not constitute an adverse employment event as a matter of law.

The primary adverse employment event that Lunardini alleges he suffered — and the only such event alleged to take place within the relevant time-limitation period — was his loss of the job at MassMutual.   But as Lunardini concedes, the direct cause of his termination was his own decision not to return from disability leave on March 14, 2007, as his employer had expected.

---

[12]     MassMutual appears to have presumed the same thing: "Plaintiff filed a dual charge with the CHRO and the EEOC on July 26, 2007."  Def's Mem. at 2 ¶ 7.

Lunardini claims that he decided to stay home because immediately prior to his planned return, he received word that O'Donnell did not want him back at the office.  In his words:

> Tricia O'Donnell heard [that Lunardini would return from disability leave] . . . and was visibl[y] annoyed.  She announced my return at this meeting in front of the entire management team.  One witness, Kristin Partelo informed peer manager, Erin Beck, that Tricia [O'Donnell] was clearly not happy and expressed that in the meeting. . . .  One of the managers . . . said, "Isn't that a good thing that he is coming back?"  Tricia [O'Donnell] just looked at her with a disgusted look on her face.  Linda Boutin intervened during this awkward silence by saying that it was a positive thing.  After learning of this information that evening, combined with the knowledge that she was trying to force another male manager out (Burt Dietz), I was afraid and embarrassed to return to work knowing that my manager did not want me there and was just going to fire me shortly after my return.

Compl. ex. D at 13.

MassMutual, for its part, argues that Lunardini's "decision not to return to work because his supervisor allegedly looked annoyed and disgusted after hearing that Plaintiff was returning to work does not constitute constructive discharge.  As such, Plaintiff fails to state a claim for constructive discharge . . . ."  Def.'s Mem. at 8.[13]

Because I am asked to assess the legal sufficiency of Lunardini's claim on a motion under Rule 12(b)(6), my primary inquiry is whether Lunardini "is entitled to offer evidence to support [his] claims.  In order to withstand a motion to dismiss, a complaint must plead enough facts to state a claim for relief that is plausible on its face."  *Patane v. Clark*, 508 F.3d 106, 111-

---

[13]     MassMutual cites only two cases for this proposition, and neither of the cases cited is on point.  *See* Def's Mem. at 9.  The first case, *Leviness v. Bannon*, is a civil rights complaint filed under 42 U.S.C. § 1983, where the plaintiff voluntarily resigned and "fail[ed] to set forth *any* allegations which support a reasonable inference that he left his employment involuntarily."  No. 3:99-cv-01647 (AWT), 2001 WL 1580278, *3 (D. Conn. Dec. 6, 2001) (emphasis added).  In the second case, *Etienne v. Wal-Mart Stores, Inc.*, the Court was faced with a motion for summary judgment, and it applied a standard that is entirely inapposite on this motion to dismiss.  186 F. Supp. 2d 129 (D. Conn. 2001).

12 (2d Cir. 2007) (employment discrimination claim based on Title VII) (internal quotation marks and citations omitted).  The sufficiency of the complaint is governed by Fed. R. Civ. P. 8(a)(2), requiring only "a short and plain showing that the pleader is entitled to relief," and a Title VII plaintiff need not allege facts demonstrating a prima facie case of discrimination. *See id.* at 112 n.3; *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 510, 515 (2002) ("Rule 8(a) establishes a pleading standard without regard to whether a claim will succeed on the merits . . . . [W]e hold that an employment discrimination plaintiff need not plead a prima facie case of discrimination and that petitioner's complaint is sufficient to survive respondent's motion to dismiss."); *Leibowitz v. Cornell Univ.,* 445 F.3d 586, 591 (2d Cir. 2006) (applying *Swierkiewicz* to discrimination claims under Title VII).

However, the complaint should allege a "specific gender-based adverse employment action," as well as "factual circumstances from which a gender-based motivation for such an action might be inferred."  *Patane v. Clark*, 508 F.3d at 112.[14]  In the case at bar, the only adverse employment action that occurred within the relevant limitations period is plaintiff's decision not to return to work.  In order to constitute an "adverse employment action" for the purposes of Title VII, plaintiff would need to prove at trial that in actuality, his decision not to return to work was a "constructive discharge."  To establish a constructive discharge at trial, Lunardini would need "to prove that [his] employer deliberately and discriminatorily created work conditions 'so intolerable that a reasonable person in the employee's position would have felt compelled to resign.'"  *Ferraro v. Kellwood Co.*, 440 F.3d 96, 100-101 (2d Cir. 2006) (quoting *Pa. State Police v. Suders*, 542 U.S. 129, 141 (2004)).  "[W]orking conditions are

---

[14]    Claims that gender discrimination was manifested in a hostile work environment do not require a specific adverse employment action; the sufficiency of such claims is measured under a different standard.  *See id.* at 113-14.

17

intolerable when, viewed as a whole, they are so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." *Terry v. Ashcroft*, 336 F.3d 128, 152 (2d Cir. 2003).[15]

But the high bar of proof that applies at trial or on a motion for summary judgment is not relevant when adjudicating a motion to dismiss.  In his "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), Lunardini need not prove anything.  The question here is simply whether he states a *plausible* entitlement to relief.

In evaluating the sufficiency of Lunardini's complaint, I "must accept all well-pleaded facts as true and consider those facts in the light most favorable to the plaintiff." *Patane,* 508 F.3d at 111.  That exercise includes drawing in plaintiff's favor such reasonable inferences as may be based upon his factual allegations.  Viewing the complaint in those lights, Lunardini's factual allegations support a permissible inference that O'Donnell was a difficult manager who played favorites who tended to be women, and who hired only women to fill job openings under her supervision.  One may also infer that O'Donnell targeted Lunardini for termination, based on the allegations that she pursued with great diligence the administrative procedures necessary to fire Lunardini, while simultaneously avoiding the procedures that would have improved his performance to eliminate the need to fire him.

Affording him the particular solicitude that is given to *pro se* plaintiffs, I conclude that Lunardini has crossed the "plausibility" threshold, although only barely.

---

[15]    "A constructive discharge generally cannot be established, however, simply through evidence that an employee was dissatisfied with the nature of his assignments. . . .  Nor is it sufficient that the employee feels that the quality of his work has been unfairly criticized. . . .  Nor is the standard for constructive discharge merely whether the employee's working conditions were difficult or unpleasant." *Stetson v. NYNEX Serv. Co.*, 995 F.2d 355, 360 (2d Cir. 1993) (citations omitted).

The facts that Lunardini alleges suggest to me a scenario that is all too "plausible" in today's litigious society.  For some reason or another, a manager will reach the decision that an employee should be terminated.  But if the manager has not previously documented performance deficiencies by the employee to be terminated, that manager or other corporate supervisors may conclude that an immediate termination would invite litigation.

So, as a protective measure, the manager will begin a campaign to "document" perceived performance deficiencies.  Of course, a sudden barrage of warnings and demerits looks suspicious to any judge or jury, but some employers may still perceive such a campaign to be superior from a liability standpoint to an immediate termination.  *See* Nancy Hatch Woodward, *Your Paper Trail is Showing: Terminations Demand Documentation*, 29:4 Employee Terminations Law Bulletin, Apr. 2008 ("One of the biggest problems employers face is when there has been no documentation of the issues and, in fact, the employee has been receiving positive performance reviews.  You may not be able to terminate them immediately, . . . but you can start keeping a paper trail now.  You could still go back and document things that had happened in the past . . . .   It's not as credible, perhaps, as something written at the time, . . . but it is still better than nothing.").  The situation looks even worse when the supervisor creates a paper trail describing opportunities to correct performance deficiencies, but where the supervisor does not in fact put forward any good faith effort to repair the working relationship.  That is precisely the scenario that Lunardini alleges here.  *See* Compl. ex. D at 2, 10-11.

In such situations, an employee can see the writing on the wall.  Lunardini alleges that he understood that he was on a journey where the destination was "imminent or inevitable termination."  CCHRO Charge at 3 ¶ 17, 4 ¶ 18; *see also* Compl. ex. D at 12, 13 ("I was afraid

and embarrassed to return to work knowing that my manager did not want me there and was just going to fire me shortly after my return.").

It is a familiar maxim that the law does not require vain or useless acts,[16] and Lunardini alleges that there was nothing to be gained from his returning to work except further humiliation. If that is so, then Lunardini may be able to prove during discovery that he was in fact "compelled to resign."

I must add, however, that Lunardini has only barely stated a claim for constructive discharge on his present allegations, establishing only that he is entitled to pursue discovery. It now falls upon him to discover sufficient corroborating evidence for his allegations to survive a motion for summary judgment.

### 5.    Other Claims

Besides his constructive discharge on March 14, 2007, Lunardini's complaint also alleges discrete events that took place prior to September 29, 2006. It appears that those allegations are intended to state separate claims for discrimination based on those earlier events, although they might also be construed as background evidence for his timely claim of constructive discharge.[17] *Cf. Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002) ("Nor does the statute bar an employee from using the prior acts as background evidence in support of a timely claim.").

### i.    Continuing Violation

---

[16]    "*Quod vanum et inutile est, lex non requirit.* The law does not require what is vain and useless." Black's Law Dictionary app. B (8th ed. 2004).

[17]    As described in Part I, *supra*, these include the verbal and written warnings of May and June 2006, statements about hiring men in June 2006, and Lunardini's placement on performance probation in August 2006. Lunardini's CCHRO Charge identifies those events as discrete acts of discrimination. *See* CCHRO Charge at 1 (listing placement on probation on August 24, 2007, and warnings on May 14, 2006, and June 8, 2006, as checked instances where "Respondent discriminated against me").

As just observed, the events described in footnote 17 are clearly outside the 300-day period of limitation for Title VII claims.  Lunardini has properly stated a claim for such violations only to the extent that he has plausibly alleged a "continuing violation" that extended until and includes his constructive discharge on March 14, 2007.

"Under the continuing violation exception to the Title VII limitations period, if a Title VII plaintiff files an EEOC charge that is timely as to any incident of discrimination in furtherance of an ongoing policy of discrimination, all claims of acts of discrimination under that policy will be timely even if they would be untimely standing alone." *Patterson v. Oneida County*, 375 F.3d 206, 220 (2d Cir. 2004), *quoting Lambert v. Genesee Hosp.,* 10 F.3d 46, 53 (2d Cir. 1993).

"[A] continuing violation may be found where there is proof of specific ongoing discriminatory policies or practices, or where specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice." *Cornwell v. Robinson,* 23 F.3d 694, 704 (2d Cir. 1994); *see also Morgan,* 536 U.S. at 111 (continuing violation is "composed of a series of separate acts that collectively constitute one unlawful employment practice" (internal quotation marks omitted)). Where such a continuing violation is shown, "the plaintiff is entitled to bring suit challenging all conduct that was a part of that violation, even conduct that occurred outside the limitations period." *Cornwell*, 23 F.3d at 704.

But the scope of the continuing violation doctrine is limited. "Multiple incidents of discrimination, even similar ones, that are not the result of a discriminatory policy or mechanism do not amount to a continuing violation." *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 765 (2d Cir. 1998) (quoting *Lambert*, 10 F.3d 46, 53 (2d Cir. 1993)) (internal quotation marks

21

omitted).  This is true even when "discrete" discriminatory acts "are related to acts alleged in timely filed charges." *Morgan*, 536 U.S. at 113 (2002); *see also Patterson,* 375 F.3d at 220.  A discrete discriminatory act is a "single completed action" that occurs at a specific time, and typically is actionable on its own.  *Elmenayer v. ABF Freight System, Inc.,* 318 F.3d 130, 135 (2d Cir. 2003). The Supreme Court in *Morgan* specifically identified "termination, failure to promote, denial of transfer, or refusal to hire" as examples of discrete acts, each of which "starts a new clock for filing charges." 536 U.S. at 113-14.

It is clear to me that the acts Lunardini has alleged that took place prior to September 29, 2006, are all examples of the kind of "discrete acts" which the Supreme Court has said constitute actionable events on their own, and which therefore cannot form the basis of a continuing violation.

ii.                          **Hostile Work Environment**

Aside from those discrete acts, Lunardini's allegations can be separated into two other general categories: (1) instances where O'Donnell's alleged favoritism was revealed, which do not rise to the level of an adverse employment action and therefore almost certainly are not actionable in their own right; and (2) various instances of "abuse" perpetrated by O'Donnell. Construing Lunardini's complaint to raise the strongest arguments it suggests, it would appear that he believes these events illustrate the hostile work environment that he faced at MassMutual. *See* CCHRO Charge at 1 (alleging that Respondent "harassed me on or about May 15, 2006 – March 14, 2007").

> To state a claim for a hostile work environment in violation of Title VII, a plaintiff must plead facts that would tend to show that the complained of conduct: (1) "is objectively severe or pervasive — that is, . . . creates an environment that a reasonable person would find hostile or abusive"; (2) creates an environment

"that the plaintiff subjectively perceives as hostile or abusive"; and
(3) "creates such an environment because of the plaintiff's sex."

*Patane v. Clark*, 508 F.3d at 113 (internal citations omitted; ellipsis in original).  In *Patane v. Clark*, the Second Circuit concluded that the plaintiff had "pled facts sufficient to satisfy each prong of this test" for the purposes of a motion under Rule 12(b)(6).

Reinstating the plaintiff's claim in *Patane v. Clark*, the Second Circuit wrote:

> The Supreme Court has held that a work environment's hostility should be assessed based on the "totality of the circumstances." Factors that a court might consider in assessing the totality of the circumstances include: (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is threatening and humiliating, or a mere offensive utterance; and (4) "whether it unreasonably interferes with an employee's work performance." Ultimately, to avoid dismissal under FRCP 12(b)(6), a plaintiff need only plead facts sufficient to support the conclusion that she was faced with "harassment . . . of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse," and "we have repeatedly cautioned against setting the bar too high" in this context.

*Id.* at 113 (citations omitted; ellipsis in original).

Assessing the totality of the circumstances, I conclude that Lunardini has stated a "plausible" claim for a hostile work environment.  Lunardini could have reasonably perceived the comments that O'Donnell made in March 2007 to be in furtherance of that practice, so the claim is also timely.

**iii.**          **Retaliation**

In his CCHRO Charge, Lunardini claimed that his "discriminatory treatment beginning on May 15, 2006 and continuing until [his] termination on March 14, 2007 . . . was based on my sex, male[,] and in retaliation for my stated opposition to discriminatory treatment."  CCHRO Charge at 4 ¶ 20.

> To state a claim for retaliation in violation of Title VII, a plaintiff must plead facts that would tend to show that: (1) she participated in a protected activity known to the defendant; (2) the defendant took an employment action disadvantaging her; and (3) there exists a causal connection between the protected activity and the adverse action.

*Patane v. Clark*, 508 F.3d at 115.  Because Lunardini has alleged that he made a complaint regarding his perception of discriminatory treatment, and because he alleges that his constructive discharge was at least in part motivated by that complaint, to the extent he presses a claim for retaliation, that claim survives on this motion to dismiss.

**B.        Jurisdiction Over State-Law Claims**

To the extent Lunardini raises any claims under Connecticut's state laws, MassMutual moves to dismiss those under Federal Rule of Civil Procedure 12(b)(1), in light of his failure to attach a release of jurisdiction from Connecticut's Commission on Human Rights and Opportunities ("CCHRO").[18]   Under the plain text of the Connecticut statute, release of jurisdiction from the CCHRO is a prerequisite to the personal right of action provided by the statute.  *See* Conn. Gen. Stat. § 46a-100.  Certain documents provided by the parties in this case indicate that Lunardini pursued a complaint with the CCHRO.  But if he failed to obtain a release of jurisdiction, that fact might severely constrain his ability to raise his state-law claims in federal court.[19]

---

[18]     MassMutual also claims that "the time for Plaintiff to request a release from the CHRO has expired.  Plaintiff had 210 days from the date he filed his Complaint with the CHRO [to obtain a release of jurisdiction] and his time to request a release expired on February 21, 2008." Def.'s Mem. at 6 n.4 (citation omitted).  In actuality, the statute provides that the parties to a pending human rights complaint may *jointly* request a release of jurisdiction until 210 days after the filing of the complaint; after 210 days, if the case is still pending, the complainant *alone* may seek a release. Conn. Gen. Stat. § 46a-101(b).

[19]     Courts in this district have held that a failure to attach a release of jurisdiction from the EEOC is not necessarily fatal to federal discrimination claims, so long as the plaintiff attaches the corresponding release of jurisdiction from the CCHRO, because of the existence of "work-sharing

> The party invoking federal jurisdiction bears the burden of establishing' that jurisdiction exists. Where, as here, the case is at the pleading stage and no evidentiary hearings have been held, however, in reviewing the grant of a motion to dismiss under Rule 12(b)(1) we must accept as true all material facts alleged in the complaint and draw all reasonable inferences in the plaintiff's favor. Nevertheless, even on a motion to dismiss, courts are not bound to accept as true a legal conclusion couched as a factual allegation.

*Conyers v. Rossides*, 558 F.3d 137, 143 (2d Cir. 2009) (internal quotation marks, brackets, and citations omitted).

A district court evaluating a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) "must look to the way the complaint is drawn to see if it claims a right to recover under the laws of the United States." *IUE AFL-CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1055 (2d Cir. 1993) (quoting *Goldman v. Gallant Secs. Inc.,* 878 F.2d 71, 73 (2d Cir. 1989)). The district court must bear in mind that a *pro se* plaintiff's complaint should be liberally construed, *see Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) ("Even after *Twombly,*

_____

arrangements entered into by state and federal anti-discrimination agencies." *Burke v. Also Cornerstone*, No. 3:07-cv-889 (MRK), 2007 WL 3046193, *2, 2007 U.S. Dist. LEXIS 76662, *5-6 (D. Conn. Oct. 12, 2007); *Ortiz v. Prudential Ins. Co.*, 94 F. Supp. 2d 225, 231 (D. Conn. 2000) ("As the purposes of the exhaustion requirement — to provide notice to parties charged with violations and to facilitate voluntary compliance should the investigating agency find merit in the complaint — have been served by the state proceeding, the Court does not view the omission of the actual right-to-sue letter as grounds for dismissal." (citation omitted)). However, the reverse is not necessarily true: attaching a right-to-sue letter from the EEOC, but omitting to attach a right-to-sue letter from the CCHRO, may not meet the statutory prerequisites for an action under Connecticut law. *See, e.g.*, *Ghaly v. Simsarian*, No. 3:04-cv-01779, 2009 WL 801636, *6, 2009 U.S. Dist. LEXIS 23762 (D. Conn. Mar. 26, 2009), *Sebold v. City of Middletown*, No. 3:05-cv-1205 (AHN), 2007 WL 2782527, *19, 2007 U.S. Dist. LEXIS 70081 (D. Conn. Sept. 21, 2007). *But see Dichello v. Marlin Firearms Co.*, No. CV065002796S, 2007 WL 429301, *3, 2007 Conn. Super. LEXIS 226 (Conn. Super. Ct. Jan. 22, 2007) (dismissing complaint where only the EEOC right-to-sue letter was attached, but recognizing "a split in the Superior Court as to the application of the exhaustion doctrine to employment discrimination cases regarding whether a plaintiff must always obtain a release, pursuant to General Statutes § 46b-100."); 14 Connecticut Practice Series, Employment Law § 7:24 (Supp. 2009) (describing the same split of authority).

though, we remain obligated to construe a *pro se* complaint liberally."), to raise the strongest argument that it suggests, *see Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996). The district court also "may inquire, by affidavits or otherwise, into the facts as they exist." *Land v. Dollar,* 330 U.S. 731, 735 n.4 (1947); *Connecticut Bar Ass'n v. United States*, 394 B.R. 274, 278 (D. Conn. 2008).

Even affording Lunardini the "special solicitude" that is given to *pro se* plaintiffs, the issue of whether this court has subject matter jurisdiction over a state-law employment discrimination claim is not squarely before me. I can infer from the documents attached to MassMutual's motion that Lunardini did in fact make a complaint to the CCHRO; and I can infer from the EEOC's right-to-sue letter that the CCHRO investigation probably ended in dismissal. But to reach a determination on whether this Court had supplemental jurisdiction over a Connecticut employment claim, I would also want to know (a) whether Lunardini intended to raise such a claim in the first place, (b) whether he alleges that he received a release-of-jurisdiction from the CCHRO, and (c) the date on which he alleges such jurisdiction was released.

On a flimsy record such as this, it would be inappropriate for me to rule on whether Lunardini's state-law claim actually exists. This is true even though the language of Lunardini's complaint is "broad enough to cover" a state law theory, or could be read to "suggest" it. *See Triestman v. Federal Bureau of Prisons*, 470 F.3d 471, 475 (2d Cir. 2006) (per curiam). The better practice, I am convinced, is to direct thus: **If Lunardini wishes to raise a state-law claim for employment discrimination, he must (1) amend his complaint to state that claim clearly within 30 days of this Opinion and Order, and (2) attach the documentation that the Court requires to evaluate its jurisdiction over such a claim.** *See Aurecchione v. Schoolman*

26

*Transp. System, Inc.*, 426 F.3d 635, 639 (2d Cir. 2005) (holding that a district court has authority under 28 U.S.C. § 1653 to permit amendment of the complaint to correct defective allegations of jurisdiction).

**C.       Dismissal for Improper Form**

The Federal Rules of Civil Procedure require a complaint to follow certain general guidelines as to form.  A complaint must contain "a short and plain statement" of the claims and grounds for jurisdiction, Fed. R. Civ. P. 8(a); each allegation "must be simple, concise, and direct," Rule 8(d)(1); claims or defenses must be set forward "in numbered paragraphs, each limited as far as practicable to a single set of circumstances," Rule 10(b); and "[i]f doing so would promote clarity, each claim founded on a separate transaction or occurrence . . . must be stated in a separate count." *Id.*

**1.       Rule 8**

For his complaint, Lunardini has used a generic form provided by this Court.  The structure of that form works to encourage the simplicity and conciseness that is the goal of Rule 8 of the Federal Rules of Civil Procedure.  The form provides three blank lines for each "Claim" and approximately three inches of white space for supporting facts, with instructions to attach additional pages if needed.

Lunardini has not used the spaces provided on the Court's form; instead, he has apparently recycled a sixteen-page, single-spaced memorandum that was originally addressed to the Connecticut Commission on Human Rights, and which is titled his "Rebuttal for Case." [Doc. #3] at 7-22.

Sometimes, even with the relaxed standards afforded to *pro se* plaintiffs, it is "pointedly clear that the complaint . . . runs afoul of Rule 8." *Callan v. Paulson*, No. 3:08-cv-01625 (CSH),

2009 WL 1011344, *4 (D. Conn. Apr. 15, 2009) (quoting *Lonesome v. Lebedeff*, 141 F.R.D. 397, 398 (E.D.N.Y. 1992)).

But this is not such a case. Dismissal "is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *Simmons v. Abruzzo*, 49 F.3d 83, 86-87 (2d Cir. 1995) (quoting *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988)). While Lunardini's complaint would be impermissible if drafted by an attorney, as a *pro se* pleading, it is sufficient to place the defendants on notice of the claims he wishes to raise.

The sufficiency of Lunardini's pleading under Rule 8 is all the more evident because MassMutual was able to distill its relevant allegations into the "Facts" section of its Motion To Dismiss. *See* Def.'s Mem. [doc. #9] at 1-3.

**2.**          **Rule 10(b)**

It is true that Lunardini's complaint violates the letter of Rule 10(b), because his factual allegations (as found in "Addendum D") are not separated into individually numbered paragraphs. However, Lunardini's CCHRO charge makes up for that deficiency, because it alleges substantially all the same facts (if not all), and its form complies with Rule 10(b). Thus, if Lunardini decides not to amend his complaint in a way that complies with Rule 10(b), I will permit MassMutual to structure its answer as a response to his CCHRO Charge — a document that I have already found to be implicitly incorporated into the complaint by reference.

**III.    Conclusion**

MassMutual's motion to dismiss is GRANTED in part and DENIED in part.

Specifically, any discrimination claims raised under Connecticut state law are DISMISSED without prejudice. **If Lunardini wishes to press claims under Connecticut state**

28

**law, he must amend his complaint within thirty (30) to do so.  As instructed in Section II.B,** *supra***, he must attach documentation to his amended complaint, such as his right-to-sue letter (release of jurisdiction) from the CCHRO, that establishes this Court's jurisdiction over such claims.**

Similarly, any claims stemming from discrete events that precede September 29, 2006, are DISMISSED without prejudice.  **If Lunardini wishes to press such claims, he must amend his complaint within thirty (30) days, supplying allegations that are sufficient, as a matter of law, to state a claim for a continuing violation.**

Lunardini's claim for sex discrimination in his constructive discharge, for retaliation through that discharge, and for a hostile work environment may all proceed.

If Lunardini wishes to amend his complaint to comply with Rule 10, which requires a plaintiff to separate his allegations into numbered paragraphs that contain, to the extent possible, one fact per paragraph, he must do so within thirty (30) days.  **Otherwise, if he does not file an amended complaint within 30 days of this order, then MassMutual is directed to answer the original complaint within 50 days of this order.  To facilitate its answer, MassMutual may respond in numbered paragraphs corresponding to the numbered paragraphs of Lunardini's CCHRO Charge, attached as Exhibit B to its Motion To Dismiss.  *See* CCHRO Charge [doc. #9-3] at 2-6, ¶¶ 1-20, and separately numbered ¶¶ 1-15.**

As discussed in Section II.A.2, *supra*, the Clerk of Court is directed to amend the docket entry that reads "Complaint received," so that it reflects accurately the date stamped on the back of the complaint.

It is SO ORDERED.

Dated: New Haven, Connecticut
       March 1, 2010

                                        ___/s/ Charles S. Haight, Jr._____
                                        Charles S. Haight, Jr.
                                        Senior United States District Judge